**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **RULE 29 MOTION FOR JUDGMENT** |
| | ) | **OF ACQUITTAL AND NEW TRIAL** |
| vs. | ) | |
| | ) | |
| Glenn J. White Bull, | ) | Case No. 1:09-cr-037 |
| | ) | |
| Defendant. | ) | |

Before the Court is the defendant's "Rule 29 Motion for Judgment of Acquittal and New Trial" filed on March 4, 2010. See Docket No. 53. The Government filed a response to the motion on March 5, 2010. See Docket No. 58. For the reasons set forth below, the Court **DENIES** the motion.

**I.     BACKGROUND**

On May 5, 2009, the defendant, Glenn J. White Bull, was charged in a five-count indictment with five counts of aggravated sexual abuse of a child, violations of 18 U.S.C. §§ 2241(c) and 1153. See Docket No. 14. The sexual conduct allegedly occurred from September 2008 through March 2009. A two-day trial commenced on February 23, 2010, and resulted in a jury verdict of guilty on all five counts. Each count carries a 30-year mandatory minimum sentence.

The defendant contends that during jury selection, juror 494 was selected as part of the venire. The defendant contends that during individual voir dire, defense counsel asked members of the panel if they or anyone else close to them had ever been a victim of a sexual assault or sexual abuse, and no member of the panel responded. Ultimately, juror 494 was selected as one of the

members of the 12-person jury. He listened to all of the evidence and testimony presented at trial, received jury instructions from the Court and, thereafter, the jury retired for deliberation on February 24, 2010. On Thursday morning, February 25, 2010, juror 494 was waiting to speak with the undersigned before the jury began their deliberations that morning. Juror 494 informed the Court that he was somewhat concerned because of how he had responded, or failed to respond, to a question during jury selection. Juror 494 informed the Court that he was uncertain whether he may have been a victim of a sexual assault or some sexual conduct more than 20 years ago. The matter was immediately brought to the attention of counsel. The following excerpt from the trial transcript reveals the information that was disclosed to the parties that morning:

> THE COURT:  The other matter that I wanted to bring to the attorneys' attention is, this morning when I arrived at 8:15, Juror Number 1, [juror 494], had asked to visit with me and had indicated to my staff that he was uncertain as to whether he had responded appropriately during voir dire to a question. I asked [juror 494] to come back in my office, and he told me that he last night had reflected upon the trial and the jury instructions and the closing arguments of the parties, and he wanted to inform me of a matter that had been of some concern to him.
>
> He went on to tell me that in 1986, when he was about 20 years of age, a friend of his -- there had been some sexual contact between he and a friend of his, a male friend. [Juror 494] said that it had not concerned him at the time. There wasn't anything that was ever reported to anyone about it. He feels that it was something that he has just set aside in his mind because he had never been too terribly concerned about it. [Juror 494] said that he's not concerned about it today either. He has never felt there was a need for any counseling or treatment or reporting of this incident.
>
> However, he said that in reflecting on his life and his past and his experiences, that he's just not sure whether this was a sexual assault or really what it was, but he simply wanted to let me know that he didn't -- he was uncertain whether he needed to revise his response to a question that had been propounded during jury selection to the effect that, quote, do any of you know of anyone that has ever been sexually assaulted, or words to that effect.
>
> [Juror 494] said he thought the question had been directed to the entire jury panel by defense counsel, Mr. Schmidt. And he was concerned because he had not

responded affirmatively to that, but again, went on to tell me that he wasn't really certain in his own mind whether this was a sexual assault, and he said he really isn't sure what a sexual assault is. He offered to volunteer more information if I wanted, but I said that he need not and that I would share this with the attorneys.

My gut impression from [Juror 494] is that this was some sort of sexual encounter that he had with a close male friend of his. This occurred during the summer months while he was in college, when he was age 20, and that was the gist of my discussion with him. My gut impression is also that this was probably a search for his sexual identity that may still be ongoing, and he wasn't quite certain how to assess that sexual encounter.

Do either counsel feel that there's a need for me, as a presiding judge, to inquire further or do anything? Mr. Volk?

MR. VOLK: I don't, Your Honor.

MR. SCHMIDT: My only concern -- and I use the term with, I guess, a small C, is that had he disclosed that in voir dire, I would have anticipated that I would have pursued that issue a bit more with him just to get some more details because certainly if, as a result of questioning, he indicated that he would have -- it would be uncomfortable for him or that he might be somewhat biased as it relates to the nature of the charges against Mr. White Bull given the experience that he shared with you this morning, it's possible that we may have -- depending on what his responses were, it could have risen to a request for striking him for cause or certainly, you know, using one of our preempts on him.

I don't know that we would have gotten that far because, obviously, I don't know any more than what he's told you and what you've shared with us this morning, but that's a concern I've got. I don't know -- and it may be that if he responded as he told you and left it at that, it may not have made any difference at all.

THE COURT: And the one thing that he did tell me just before he was leaving is that he said he doesn't feel that this -- that this would affect his ability to decide this case, and he actually wanted to fulfill his responsibility as a juror in this case or words to that effect is what he said to me as he was walking out. So I've told you all I know.

MR. SCHMIDT: And I don't know that I'm in a position to, based on that limited information, to move for a mistrial or anything like that. It's somewhat vague.

THE COURT: Anything else, Mr. Volk?

3

      MR. VOLK:  No, Your Honor.

      THE COURT:  Well, I'm not going to take any further action on it, nor bring [juror 494] in to share details of that sexual encounter, if one can accurately describe it as such.  My impression from him is that he's a pretty conscientious guy that wants to do the right thing.  And he's carefully read the jury instructions, I gathered, from what he mentioned.

      And I don't believe that he was being deceitful or dishonest in his failure to respond affirmatively to that question that was directed to the panel of whether you know of anyone that's been sexually assaulted because, again, he told me several times, "I'm not even sure in my own mind whether this was a sexual assault that I was a part of or really what it was."

      So I've fully disclosed everything that I know and my impressions, and I don't feel as the presiding judge that there's a need for me to inquire further, make any further inquiry or take any corrective action in terms of precautionary instruction or anything else to the jury panel. If either feel differently, please note for the record.

      MR. VOLK:  Nothing else, Your Honor.

      MR. SCHMIDT:  I think my comments earlier reflect where I'm coming from too.

See Docket No. 56, Partial Transcript of Jury Trial, pp. 3-7.

## II.     LEGAL ARGUMENT

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. amend. VI.  The Supreme Court has interpreted this to mean that a criminal defendant has a constitutional right to a jury free from prejudice and "capable and willing to decide the case solely on the evidence before it."  Smith v. Phillips, 455 U.S. 209, 217 (1982).  To protect that right, a trial judge must be "ever watchful to prevent prejudicial occurrences," and, therefore, must conduct voir dire in a manner that adequately

identifies unqualified or potentially biased jurors. Id.; see Morgan v. Illinois, 504 U.S. 719, 729-34 (1992).

In order to obtain a new trial on the basis of juror misconduct during voir dire, a party challenging a juror's qualifications must show (a) that the juror failed to honestly answer a material question on voir dire, and (b) that a correct response would have provided a valid basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); United States v. Tucker, 243 F.3d 499, 502 (8th Cir. 2001); United States v. Williams, 77 F.3d 1098, 1100 (8th Cir. 1996); United States v. St. Clair, 855 F.2d 518, 521-22 (8th Cir. 1988). Only those reasons that affect a juror's impartiality can truly be said to affect the fairness of the trial. The district court has broad discretion in handling allegations of juror misconduct and its decision will be affirmed absent an abuse of discretion. Id.

The record does not establish that the juror was dishonest in his answer (or failure to respond) to the question posed by defense counsel during the voir dire process. The question concerned whether any of the jurors themselves or anyone close to them had ever been a victim of a sexual assault. Juror 494 was uncertain whether the sexual encounter he had been involved in more than twenty (20) years ago was a sexual assault or sex abuse, even after having heard and read the Court's instructions and heard the parties' closing arguments. The description of the conduct provided by the juror did not reveal that the prior encounter involved the use of force, was perpetrated while he was unable to consent, involved an inappropriate age disparity, or involved conduct or circumstances that would otherwise qualify the matter as a sexual abuse or assault. As a result, the Court finds that his failure to respond to the question cannot be said to have been

dishonest or deceitful in any manner. The Court finds that the first part of the McDonough test has not been met because there was no deception or dishonesty on the part of the juror.

It was the Court's general impression from juror 494 that he had a sexual encounter with a close male friend during his college-age years that the juror was still uncertain about, and he simply wanted to inform the Court about those concerns in the midst of jury deliberations. Without a showing of dishonesty in the juror's response, the Court concludes that the defendant is not entitled to the relief he seeks in this motion.

Further, the defendant cannot demonstrate that a response by juror 494 to the voir dire question would have established a valid basis for a challenge for cause. The juror indicated to the Court that the prior sexual encounter did not affect his ability to decide the issues in this case. As a result, assuming the juror had responded differently to the question posed in voir dire, his answers would not have provided a valid basis for a challenge for cause. The other prospective jurors who were excused by the Court for cause during voir dire were excused because they indicated they could not be fair and impartial given their past life experiences. In addition, bias cannot be implied by the failure of the juror to respond during voir dire. Juror 494 voluntarily came forward during the trial. His disclosure during trial suggests that he was not intentionally keeping secret some fact or event that he knew would get him excused from jury service so that he could improperly prejudice the other jurors. To the contrary, the record supports a finding that the juror was conscientious and impartial.

In summary, the Court finds that there is no factual or legal basis for a judgment of acquittal or the granting of a new trial under the circumstances. A careful review of the entire trial proceedings leads the Court to the conclusion that the juror in question was not dishonest or

deceitful in his response, or lack of response; that there was no basis for a challenge for cause; and that there was no juror misconduct that deprived the defendant of a fair trial.

**IT IS SO ORDERED.**

Dated this 22nd day of March, 2010.

              */s/ Daniel L. Hovland*
              Daniel L. Hovland, District Judge
              United States District Court